MARK C. MOLUMPHY (#168009)
mmolumphy@cpmlegal.com
MATTHEW K. EDLING (#250940)
medling@cpmlegal.com
JENNIFER R. CRUTCHFIELD (#275343)
jcrutchfield@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

JEFFREY C. BLOCK (*pro hac vice*)
jblock@blockesq.com
SCOTT A. MAYS (*pro hac vice*)
scott@blockesq.com
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 1303
Boston, Massachusetts 02110
Telephone: (617) 398-5600
Fax: (617) 507-6020

*Attorneys for Plaintiff Ronald Shephard*
*Individually and on Behalf of All Others*
*Similarly Situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD SHEPHARD and HENRY ROMINES, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>LOWE'S HIW, INC., and DOES 1 through 50.<br><br>Defendants. | CASE NO. 12-CV-03893-JSW<br><br>**<u>REDACTED</u> PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** August 23, 2013<br>**Time:** 9:00 a.m.<br>**Courtroom:** 11 |

⊛
LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION*; CASE NO. 12-CV-03893-JSW

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on August 23 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11 before the Honorable Jeffrey S. White of the United States District Court, Northern District of California, Plaintiff Ronald Shephard will move the Court for an order, pursuant to Federal Rule of Civil Procedure 23, certifying a class (the "Class").

Shephard seeks certification of a Class consisting of all persons who installed products on behalf of Lowe's HIW, Inc. ("Lowe's") or performed Installation Services for Lowe's in the State of California as legacy installers, or general contractors, and who were misclassified and treated as independent contractors by Lowe's.

This motion is also made pursuant to the Court's Order Setting Briefing and Hearing Schedule for Motion for Class Certification. (Dkt. No. 34.)

This motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities, the declaration of Scott A. Mays, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

## TABLE OF CONTENTS

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

II.  PRELIMINARY STATEMENT ................................................................................... 1

III. STATEMENT OF FACTS ........................................................................................... 3

    A.   Background ........................................................................................................ 3

    B.   The *Borello* Factors ......................................................................................... 4

    C.   Shephard and the Class Were Misclassified .................................................... 5

    D.   The Instant Litigation ....................................................................................... 8

III. LEGAL STANDARD ................................................................................................. 8

IV.  ARGUMENT ............................................................................................................. 9

    A.   The Requirements Of Fed. R. Civ. P. 23(a) Are Satisfied ............................... 9

        1.   The Members Of The Class Are So Numerous That Joinder Is Impracticable ........ 9

        2.   There Are Common Questions of Law Or Fact .................................... 10

        3.   Plaintiff's Claims Are Typical Of The Class Claims ........................... 13

        4.   Plaintiff Will Fairly And Adequately Represent The Interests Of the Class ......... 14

    B.   The Requirements Of Fed. R. Civ. P. 23(b)(3) Are Satisfied ......................... 15

        1.   Common Questions Of Law Or Fact Predominate .............................. 15

        2.   A Class Action Is The Superior Method To Adjudicating This Action ........... 18

V.   CONCLUSION ......................................................................................................... 19

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                    PAGE

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)............................................................................ 15

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ............................................................ 10

*Chun-Hoon v. McKee Foods Corp.,*
    No. C-05-620, 2006 U.S. Dist. LEXIS 82029 (N.D. Cal. Oct. 31, 2006) .............................. 16

*D'Italia, v. Lowe's Home Centers, Inc.,*
    Civ. No. 11-4758-BLS1, slip op. (Suffolk. Super. Ct. Dec. 4, 2012)............................ 2, 12, 13

*Dalton v. Lee Publ'ns,*
    270 F.R.D. 555 (S.D. Cal. 2010) ........................................................ 16

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)............................................................................ 9

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ............................................................ 13

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................... 15, 18

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ........................................................ 13, 14

*In re Salomon Analyst Metromedia Litig.,*
    544 F.3d 474 (2d Cir. 2008)............................................................ 9

*In re Wells Fargo Home Mortg.,*
    571 F.3d 953 (9th Cir. 2009) ............................................................ 15

*Kurihara v. Best Buy Co.,*
    No. C 06-01884, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 30, 2007)............................ 9

*Leyva v. Medline Industries, Inc.,*
    No. 11-56849, slip op. (9th Cir., May 28, 2013) ...................................... 15, 18

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ............................................................ 15

*Lopez v. G.A.T. Airline Ground Support, Inc.,*
    No. 09-cv-2268, 2010 U.S. Dist. LEXIS 95636 (S.D. Cal. Sept. 13, 2010)................ 10, 11, 14

*McFarland v. Memorex,*
    96 F.R.D. 357 (N.D. Cal. 1982)........................................................ 15

*Meyer, et al. v. U.S. Tennis Ass'n,*
    No. 11 Civ. 6268, 2013 U.S. Dist. LEXIS 60091 (S.D.N.Y. Apr. 25, 2013)........................ 19

*Nat'l Fed'n of the Blind v. Target Corp.,*
    582 F. Supp. 2d 1185 (N.D. Cal. 2007) ................................................ 9

## TABLE OF AUTHORITIES (continued)

CASES                                                                                                              PAGE

*Norris-Wilson v. Delta-T Group, Inc.*,
   270 F.R.D. 596 (S.D. Cal. 2010) ................................................................................. passim

*Phelps v. 3PD, Inc.*,
   261 F.R.D. 548 (D. Or. 2009) ......................................................................................... 16

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) ................................................................................... 13

*S.G. Borello & Sons, Inc. v. Dept. of Indus. Relations*,
   48 Cal. 3d 341 (1989) .................................................................................................. 1, 4

*Sibert v. TV Magic, Inc.*,
   No. 12-cv-03404-DDP, 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. Aug. 21, 2102) ......... 16, 19

*Soto v. Diakon Logistics, Inc.*,
   No. 08-CV-33, 2010 U.S. Dist. LEXIS 89330 (S.D. Cal. Aug. 30, 2010) ............................. 10

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l
   Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. 2010) ........................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................................... 8, 10

*Wolin v. Jaguar N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ......................................................................................... 9

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087, (9th Cir. 2010) ...................................................................................... 15


STATUTES AND REGULATIONS

CAL. BUS. AND PROF. CODE § 17200 ................................................................................. 1

CAL. LAB. CODE § 2750.5 .................................................................................................. 1

CAL. LAB. CODE § 2802 ..................................................................................................... 1


RULES

Fed. R. Civ. P. 23 .................................................................................................... passim


TREATISES

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22 (3d ed. 2004) ............................... 9

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF ISSUES TO BE DECIDED

- Where the sole legal issue is whether class members are improperly classified as independent contractors, is class certification under Rule 23 of the Federal Rules of Civil Procedure appropriate?

- Whether Plaintiff Ronald Shephard is typical of and will adequately represent a class of misclassified independent contractors and therefore should be appointed Class Representative under Rules 23(a)(3) and (a)(4)?

- Whether Block and Leviton LLP and Cotchett, Pitre & McCarthy, LLP, two firms with extensive and complementary expertise in class action litigation, should be appointed Class Counsel pursuant to Rule 23(g).

## II.   PRELIMINARY STATEMENT

Plaintiff Ronald Shephard ("Shephard"), submits this memorandum of law in support of his motion pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order certifying this action as a class action on behalf of the following class (the "Class"):

> All persons who installed products on behalf of Lowe's HIW, Inc. ("Lowe's") or performed Installation Services for Lowe's in the State of California as legacy installers, or general contractors, and who were misclassified and treated as independent contractors by Lowe's.

The gravamen of this action is the misclassification of installers by Lowe's as independent contractors rather than employees in violation of California Labor Code § 2750.5 and § 2802, and in violation of the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, et seq.  Pursuant to California law, a worker performing services for an employer is presumed to be an employee, unless the employer is able to establish that, *inter alia*, the worker possesses *the right* to control the manner and means of performing the job, and the work in question is outside of the company's "regular business."  *See S.G. Borello & Sons, Inc. v. Dept. of Indus. Relations*, 48 Cal. 3d 341, 350-51 (1989).

There are seven additional factors that are examined to determine whether a worker is properly classified as an employee or an independent contractor.  Among the additional criteria that Lowe's will have to establish to rebut the presumption of employee status include "whether

the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work," "whether the one performing services is engaged in a distinct occupation or business," and "whether or not the parties believe they are creating the relationship of employer-employee." *See Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 602 (S.D. Cal. 2010).

As demonstrated herein, this action satisfies all of the prerequisites for class certification as established by Rule 23 of the Federal Rules of Civil Procedure: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). There are more than 860 Installers who are part of the proposed class. There is also, at minimum, one predominate issue: whether the class members were improperly classified as independent contractors by Lowe's. Shephard is typical of all other class members because he was engaged by Lowe's under the same contract that all other installers work under and he was misclassified by Lowe's. Lastly, Shephard will adequately represent the class and his counsel, Block & Leviton LLP ("Block & Leviton") and Cotchett, Pitre & McCarthy, LLP ("CPM"), are vigorously prosecuting this action and Block & Leviton has already been certified to represent a class of Lowe's installers in Massachusetts. *See D'Italia, v. Lowe's Home Centers, Inc.*, Civ. No. 11-4758-BLS1, slip op. (Suffolk. Super. Ct. Dec. 4, 2012) (certifying class of Lowe's general contractor installers under Massachusetts independent contractor misclassification act), Exhibit 1 to the Declaration of Scott A. Mays ("Mays Decl.") submitted herewith.

Furthermore, this case meets the two main requirements for certification pursuant to Fed. R. Civ. P. 23(b)(3). Common questions predominate in this case and include whether Lowe's has the right to control the manner and means of the class members' work, and whether installation services are part of Lowe's "regular business." Finally, a class action is the superior method for adjudicating this controversy. *See* Fed. R. Civ. P. 23(b)(3). Accordingly, Shephard requests that the Class be certified pursuant to Fed. R. Civ. P. 23, he be appointed as class representative, and Shephard's counsel, Block & Leviton and CPM be appointed as Class Counsel.

III.   **STATEMENT OF FACTS**

   A.   <u>**Background**</u>

   Plaintiff's allegations arise from Defendants' misclassification of him as an independent contractor.  The Complaint alleges that Defendants hired Plaintiff as an independent contractor to install garage doors for Defendants sometime after 1999 and continued the relationship through and until November 2009.  (*See* Am. Compl.[1] ¶¶ 18-19.)  Plaintiff received none of the benefits Defendants offered its employees.  (*See* Am. Compl. ¶ 20.)  However, Plaintiff was not actually treated as an independent contractor.  Defendants heavily controlled the work and manner in which Plaintiff was to install the garage doors, and instructed Plaintiff to represent himself as Defendant's employee.  (*See* Am. Compl. ¶¶ 22-24.)

   Defendant Lowe's is the world's second largest home improvement retailer, and operates approximately 98 stores in the state of California.  (Am. Compl. at ¶ 3; 2012 Annual Report on Form 10-K of Lowe's Companies Inc. as filed with the United States Securities and Exchange Commission ("SEC") on April 2, 2013 at 4, Mays Decl. at Ex. 2.)  In its 2012 Form 10-K, under the section entitled "Our Services" Lowe's discloses that:

> We offer installation services through independent contractors in many of our product categories, with Flooring, Millwork and Cabinets & Countertops accounting for the majority of installed sales.  Our Installed Sales model, which separates selling and project administration tasks, allows our sales associates to maintain their focus on project selling, which *project managers ensure that the details related to installing the products are efficiently executed.  Installed Sales, which includes both product and labor, accounted for approximately 7% of total sales in fiscal 2012.*  (*Id.* at 7 (emphasis added).)

   Beginning in approximately 2000, Plaintiff installed garage doors and garage door openers for Lowe's stores in California as a "Legacy," or "Type 1," installer.[2]  (Am. Compl. at

---

[1] "Am. Compl. ¶ ___" refers to the Amended Complaint filed by Plaintiff on June 20, 2012.

[2] Lowe's installers are separated into three categories: (1) legacy, or type 1, installer; (2) general contractor and (3) type 2 installer.  This action seeks to represent legacy and general contractor installers. type 1 and general contractor installer directly contract with Lowe's, are required to follow Lowe's guidelines as set forth herein and abide by a uniform set of rules.  A type 2 installer, however, is provided to Lowe's by a product manufacturer and is an employee of that company.   Type 2 installers only install the product manufactured by their employer, e.g.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

¶¶ 5, 8.)  Lowe's classified Plaintiff as an independent contractor and provided him with Form 1099s for all payments he received from Defendant.  (Am. Compl. at ¶ 20.)

### B.    The *Borello* Factors

The determination of whether Lowe's improperly classified Plaintiff and the other class members for purposes of § 17200 of the California Business and Professions Code and § 2802 of the California Labor Code turns on the common law definition of "employee" as established by the court in *S.G. Borello & Sons, Inc.*, 48 Cal. 3d at 350-51.  The principal test as established in *Borello* is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the desired result…."  *Id.* at 350.  There are also "secondary indicia of the nature of a service relationship," that include whether the worker can be discharged at will and without cause.  *Id.*  The eight remaining factors that have been gleaned from *Borello* are as follows:

> (a) whether the one performing services is engaged in a distinct occupation or business;
>
> (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision;
>
> (c) the skill required in the particular occupation;
>
> (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (e) the length of time for which the services are to be performed;
>
> (f) the method of payment, whether by the time or by the job;
>
> (g) whether or not the work is a part of the regular business of the principal; and
>
> (h) whether or not the parties believe they are creating the relationship of employer-employee.

*See Norris-Wilson*, 270 F.R.D. at 602.

---

Corian® countertops.  Lowe's has a separate contract with that manufacturer and has no interaction with that company's employee.

### C.   Shephard and the Class Were Misclassified

Shephard is typical of each Lowe's installer and was misclassified by Lowe's.  Lowe's treats all installers like employees, except it classifies them as independent contractors in order to avoid paying its share of the FICA tax (7.65% on all wages) and numerous other benefits that are offered to other employees.

Like all other installers, Shephard was interviewed by an "Area Installation Manager" as part of the "on-boarding" process to become a Lowe's installer.  (*See* Deposition of Shelly Livaudais[3] (May 22, 2013) ("Livaudais Dep.") at 18:9-10, Mays Decl. at Ex. 3, Deposition of Ronald Shephard (March 22, 2013) ("Shephard Dep.") at 95:16-22, Mays Decl. at Ex. 4.)  After being brought on board, Shephard and each of his employees, like all installers, were required to submit to and pass a background check before they could work on any Lowe's project. (Livaudais Dep. at 78:5-17, Mays Decl. at Ex. 3.)

Shephard, like all installers, was required to enter into an agreement with Lowe's.  The installer contract, entitled "Contract for Installation Services" ("Installer Contract"), is virtually identical for all Lowe's installers with the exception of specifying the type of product the installer is to install and the amounts that the installer will be paid.  (*See* Livaudais Dep. at 42:16-43:2, Mays Decl. at Ex. 3; LOWES_00005-LOWES_00007, LOWES_03970-LOWES_03976, Mays Decl. at Exs. 5, 6.)  The Lowe's Installer Standards of Courtesy and Professionalism ("Lowe's Standards") is an appendix to every Installer Contract.  (*See* Livaudais Dep. at 44:18-23, Mays Decl. at Ex. 3; LOWES_02003-LOWES_02006, Mays Decl. at Ex. 7; *see also* LOWES_02682-LOWES_02706, Mays Decl. at Ex. 8.)  The Lowe's Standards provide specific instructions regarding how the installer is to perform or carry out his installation services.  Although the Lowe's Standards are not an appendix to General Contractor installer contracts, they are made part of the Lowe's General Contractor Guide and general contractors are required to sign and acknowledge that they received the Lowe's Standards and will comply with them.

---

[3] Ms. Livaudais was one of the Lowe's Area Installation Managers who had responsibility for the area in which Mr. Shephard worked.  The final transcript of Ms. Livaudais's deposition was unavailable at the time of filing, thus a rough transcript is attached.  Plaintiff will supplement with the final transcript when it becomes available.

1   (*See* LOWES_02658-LOWES_02681, Mays Decl. at Ex. 9; LOWES_03977-LOWES_04006,

2   Mays Decl. at Ex. 10.)   Similarly, the Installer Contract states that the Lowe's Standards are

3   provided to each installer so they "understand Lowe's expectations." (*See* Mays Decl. at Ex. 7.)

4   A Lowe's Area Installation Manager, the Lowe's manager who is responsible for overseeing the

5   performance of the installers, "gives the installer a copy of these standards and has them sign it

6   as a companion to their contract…." (*Id*.)

7        Pursuant to the Lowe's Standards, Lowe's requires each installer to agree that "all

8   installation work is described within the scope of work outlined by the installation contract and

9   Lowe's installation program." (*Id*.)   The Lowe's Standards provide that "all leads and prospects

10  for additional business resulting from or in any way connected to any Lowe's related are the

11  property of Lowe's." (*Id*.)

12       The Lowe's Standards also have specific provisions regarding the installers' job site

13  conduct and expressly provide that the installer is always required to "wear Lowe's Independent

14  Contractor apparel at all Lowe's job sites" and must "*remember that to Lowe's customers, you*

15  *are the face of Lowe's*." (*Id*.) (emphasis added.)   The Lowe's Standards also require the installer

16  to "always promote Lowe's installation services to our customers." (*Id*.)   Moreover, installers

17  are required to "leave Lowe's 'Leave Behind' brochure[s][4] with the customers at the end of the

18  installation" and "display [y]ard signs [] on all job sites where permitted…." (*Id*.)

19       The Lowe's Standards further require installers to "consistently follow all Lowe's

20  procedures related to installation, including proper execution of all paperwork and use of only

21  Lowe's authorized forms." (*Id*.)   Installers are also required to "communicate all scheduled

22  dates, pick up dates and completion dates to the Production Office as well as any changes to the

23  timeliness of a job or work order." (*Id*.)

24       With regard to any work order changes or questions, the Lowe's Standards require the

25  installer to "contact the Lowe's Production Office.   Do not get the customer involved with

26  matters relevant only to Lowe's and the [installer.]" (*Id*.)   The Installer and GC Contracts

27

28

_____

[4] The Leave Behind Brochure is a pamphlet advertising other Lowe's installation products and services.

provide that the Installer "may not perform any change or addition requested by a Customer unless a change order or new Customer Contract is executed by Lowe's." (*See* Mays Decl. at Exs. 6, 10.)

The Installer Contracts provide specific requirements with regard to the timing of the completion of installation projects.[5]  (*Id.*)  They also contain uniform requirements for the amount of commercial, workers' compensation and employers' liability insurance each installer must maintain.  (*Id.*)

Lowe's has policies and procedures in place through which it measures the installers' performance and compliance with the Lowe's Standards.  (LOWES_01987, LOWES_01988, Mays Decl. at Exs. 11, 12.)  Furthermore, all customers are customers of Lowe's.  Customers purchase installation services from Lowe's and pays Lowe's for the services.  (Livaudais Dep. at 133:15-21, Mays Decl. at 3.)  Lowe's, in turn, selects the installer and pays the installer based on a rate schedule that is appended to the Installer Contract.  If any additional work needs to be performed at the job site, the customer is to contact Lowe's, and not the installer, to arrange for any additional work and the customer pays Lowe's.  (*Id.* at 67:24-70:1.)  Lowe's stands behind and warranties all the work, including labor.  (*See* Mays Decl. at Ex. 13.)

Lastly, Lowe's has procedures in place for warning and terminating installers who do not meet its expectations or fail to comply with the requirements of the program.  (LOWES_02656-LOWES_02657, LOWES_02653-LOWES_02655, Mays Decl. at Exs. 14, 15.)

Thus, as is typical in an employer-employee relationship, Lowe's interviews and hires the installer, sets forth guidelines on proper installer conduct, oversees the installer's performance and, if the performance is unsatisfactory, implements procedures for warning and then

---

[5] As the contract provides: "**Timeliness:** Consistently deliver timely customer contact**.** For contractors who install product only: 1.Contact customer within 48 hours to schedule measure details**;** 2. Complete the detail within 5 business days; 3.Complete the installation within 5 business days of the product being received and staged at the store.  For contractors who furnish and install products: 1. Contact the customer within 48 hours to schedule measure details/template; 2. Complete the detail within 5 business days."

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

1   terminating the installer.  Plus, Lowe's sends its installers out to work on Lowe's jobs, for

2   Lowe's customers, who pay Lowe's.

3         Shephard, like all other installers, was an employee of Lowe's.  As we show, this action

4   meets all the requirements of Rule 23 of the Federal Rules of Civil Procedure and should be

5   certified as a class action.

6         **D.     The Instant Litigation**

7         Plaintiff filed this action in California Superior Court on June 20, 2012.  Then, on July

8   23, 2012, Defendant answered the Complaint and generally denied Plaintiffs' allegations.  *See*

9   *Shephard and Romines v. Lowe's HIW, Inc.*, Case No. CGC-12-521641, Defendant Lowe's

10  HIW, Inc.'s Answer to Unverified First Amended Class Action Complaint ("Answer").  On July

11  25, 2012, Defendant filed a Notice of Removal of Action.  (*See* Notice of Removal (Dkt. 1).)  On

12  February 6, 2013, the parties stipulated to the dismissal of one of the named Plaintiffs, Henry

13  Romines, from this action with prejudice.

14  **III.    LEGAL STANDARD**

15        A class may be certified if the prerequisites of Rule 23 are met, including: (1)

16  numerosity, (2) commonality of law or fact, (3) typicality between the class claims and those of

17  the named parties, and (4) adequacy of representation by the named parties and class counsel.

18  Fed. R. Civ. P. 23(a).

19        "[T]he proposed class must also satisfy at least one of the three requirements listed in

20  Rule 23(b)."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  Because Plaintiff

21  seeks certification pursuant to Rule 23(b)(3), he must show that "the questions of law or fact

22  common to the members of the class predominate over any questions affecting only individual

23  members, and that a class action is superior to other available methods for the fair and efficient

24  adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

25        The decision to certify a class falls within the discretion of the District Court.  *United*

26  *Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union,*

27  *AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010).  The 9th Circuit has

28  also held that when considering whether to certify a class, Rule 23 should be liberally construed

in favor of the plaintiff. *Wolin v. Jaguar N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) ("[w]hen reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification.") (quoting *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)).

As this District has noted, "in adjudicating a motion for class certification, the court [must] accept[] the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *Kurihara v. Best Buy Co.*, No. C 06-01884, 2007 U.S. Dist. LEXIS 64224, at *12 (N.D. Cal. Aug. 30, 2007). Further, although the court should conduct a rigorous examination of Rule 23(a) factors, "the district court is not to inquire into the merits of the suit during the certification process." *Id.* at *12-13 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U. S. 156, 177-78 (1974).)

## IV.  ARGUMENT

### A.  The Requirements Of Fed. R. Civ. P. 23(a) Are Satisfied

Fed. R. Civ. P. 23(a) requires a plaintiff to establish that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Each of these requirements is met in this case.

### 1.  The Members Of The Class Are So Numerous That Joinder Is Impracticable

A plaintiff satisfies the numerosity requirement when he can show that joinder of all members is impracticable. Generally speaking, "classes numbering more than 41 individuals satisfy the numerosity requirement." *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199 (N.D. Cal. 2007) (citing *5* James Wm. Moore et al., *Moore's Federal Practice* § 23.22[1][b] (3d ed. 2004)).

1    Here, Lowe's interrogatory responses provide that the class contains approximately 865

2   individuals who performed installation services on its behalf in the State of California.[6]  (*See*

3   Mays Decl. at Ex. 16.)  Accordingly, numerosity is satisfied.

4           **2.        There Are Common Questions of Law Or Fact**

5           In order to satisfy the commonality requirement of Rule 23(a)(2), class members' claims

6   "must depend upon a common contention."   *Wal-Mart*, 131 S. Ct. at 2551.   That common

7   contention "must be of such a nature that it is capable of class wide resolution – which means

8   that determination of its truth or falsity will resolve an issue that is central to the validity of each

9   one of the claims in one stroke."  *Id.*  Further, as the Supreme Court has noted, "*even a single*

10  *[common] question will do.*"  *Id.* at 2556 (emphasis added) (quotations omitted).

11          Rule 23(a)(2) is satisfied "where the lawsuit challenges a system-wide practice or policy

12  that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

13  2001) (citations omitted).  Where a class challenges a system-wide practice, "individual factual

14  differences among the individual litigants or groups of litigants will not preclude a finding of

15  commonality."  *Id.*  Courts in this Circuit have held that "whether workers are properly classified

16  as employees or independent contractors is, by itself, a factual and legal issue that satisfies Rule

17  23(a)."  *Norris-Wilson*, 270 F.R.D. at 604; *see also, Soto v. Diakon Logistics, Inc.*, No. 08-CV-

18  33, 2010 U.S. Dist. LEXIS 89330, at *2 (S.D. Cal. Aug. 30, 2010).  Further, "variation among

19  individual claims does not defeat a finding of commonality under Rule 23(a)(2) so long as there

20  are common factual or legal questions."  *Lopez v. G.A.T. Airline Ground Support, Inc.*, No. 09-

21  cv-2268, 2010 U.S. Dist. LEXIS 95636, at *12 (S.D. Cal. Sept. 13, 2010) (quotation omitted).

22          In this case, all of Plaintiff's claims rest upon resolution of a single common issue:

23  whether Lowe's Installers are properly classified as employees or independent contractors under

24  California law.   All prospective class members have suffered the identical harm: they were

25  improperly classified as independent contractors rather than as employees, and will rely on the

26  same legal and factual arguments to prove that Lowe's improperly misclassified them.  *See*

27

28  ---
    [6] At this time, Lowe's has not produced information sufficient to identify the members of the class.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

*Lopez*, 2010 U.S. Dist. LEXIS 95636, at \*12 (commonality established where employees were subject to same company-wide policies during the class period); *Norris-Wilson*, 270 F.R.D. at 604 (same).  Plaintiff will rely upon common proof to establish that he and other Class members were improperly classified by Lowe's.

First, the Type I Installer Contracts, General Contractor Contracts, and Lowe's Standards at issue here are all materially identical.  (*See* Mays Decl. at Exs. 7, 8, 9, 10; Livaudais Dep. at 44:14-23; 46:8-25, Mays Decl. at Ex. 3 (noting that there is only one type of contract provided to all Type I Installers.))[7]  The apparent minor variations between the General Contractor and Type I Installer contracts are irrelevant to the issue of power to control, but rather address items such as types of products to be installed, rate of pay for product installations and labor, and the levels of insurance coverage.  (*See* Mays Decl. at Exs. 7, 10.)  Whether or not Lowe's has the "right to control and discretion as to the manner of performance of the contract" is clearly common amongst all class members based upon the contracts.  Because a common question has been identified amongst all of the class members, "variation among individual claims does not defeat a finding of commonality…." *Lopez*, 2010 U.S. Dist. LEXIS 95636, at \*12.  On this basis alone, the Plaintiff satisfies the requirements of Rule 23(a)(2).

Second, and without delving too deeply into the merits, even a brief examination of the secondary *Borello* factors present a host of common questions capable of class-wide determination.  For example, the inquiry into "whether or not the work is part of the regular business" of Lowe's is common to all class members.  Proof on this factor is common to all class members because the focus is solely on Lowe's, its business, and whether something that accounts for more than ▆▆ of its annual California sales is part of its "regular business."[8]  In fact, each Lowe's store has a Production Office that manages all installation services and a hierarchy

---

[7] All Type I sign the same form contract with the only minor variation being a description of the type of product they install as set out in paragraphs 2 and 3, and the appendices attached to the contract that include pricing sheets for the various installation products and services.  (Mays Decl. at Ex. 7.)

[8] Installed sales and labor made up ▆▆▆▆▆▆ of Lowe's overall California revenues in ▆▆▆▆▆▆, respectively.  (LOWES 01498, Mays Decl. at Ex. 17.)

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

of personnel has been created within the Lowe's corporate structure expressly for the purpose of selling and managing installation services. (*See* Livaudais Dep. at 24:1-27:17; 14:4-15:11; 79:20-80:16, Mays Decl. at Ex. 3.) It is obvious that the class members will rely on proof of the same conduct in this regard, and Lowe's will likely argue the same legal arguments in support of its defenses. Thus, the proposed class satisfies the commonality requirement on this additional basis.

Similarly, whether the installers are "engaged in a distinct occupation or business" is also subject to common proof. As one of the Lowe's installation managers testified, Lowe's specifically looks for installers who run their own businesses. (*See* Livaudais Dep. at 34:12-35:1, Mays Decl. at Ex. 3.) The record also demonstrates that all payments for installers are done on a per-job basis. (*See* Livaudais Dep. at 133:15-21, Mays Decl. at Ex. 3; Deposition of DeVona White ("White Dep."), at 21:22-22:13, Mays Decl. at Ex. 18.) Thus, this issue is also subject to common proof.

Furthermore, in *D'Italia*, an almost identical case pending in Massachusetts Superior Court, the Court certified a class of all Lowe's general contractors who performed installation services for Lowe's in Massachusetts. Massachusetts law regarding independent contractor misclassification is similar to California law, notably because Massachusetts law also looks at whether the work in question is part of the employer's "usual course of business." In certifying the class there, the court found:

> Although the facts before me suggest a good deal of variance in the manner in which Lowe's interacts with its installers (often depending on which store referred the job), it seems highly likely that the contract documents are common, or substantially so, to General Contractor installers across the board. On the first statutory prong, therefore, the question of whether General Contractor installers are "free from control and direction" *as a matter of contract* is common to all, though the question of whether such freedom exists "*in fact*" is not. Under the control-by-contract sub-prong of Section 148B – and recalling that if the employer fails to negate *any* prong, the plaintiff wins – there is therefore at least this common issue among General Contractor installers.

*D'Italia v. Lowe's Home Centers, Inc.*, Civ. No. 11-4758-BLS1, slip op. at 13 (Suffolk. Super. Ct. Dec. 4, 2012) (emphasis in original), Mays Decl. at Ex. 1.

The *D'Italia* Court did not include legacy installers as part of the class because "no copy of a Legacy installer contract [was] included in the record." *D'Italia*, Civ. No. 11-4758-BLS1 at 3.[9]   The Court would not presume that the contractual control provisions were the same as between general contractors and legacy installers. As shown herein, however, since the relevant control provisions concerning the legacy installers and general contractors are essentially identical, the same reasoning underling the *D'Italia* decision is equally applicable here.

For all of these reasons, Plaintiff has satisfied the requirements of Rule 23(a)(2).

### 3.   Plaintiff's Claims Are Typical Of The Class Claims

Rule 23(a)(3) requires that "the claims…of the representative parties [be] typical of the claims…of the class." Fed. R. Civ. P. 23(a)(3). To demonstrate typicality under Rule 23(a)(3), a Plaintiff "must show that the named parties' claims are typical of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). As the Ninth Circuit has held, the typicality inquiry focuses on: "'whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

In this case, Plaintiff contracted with Lowe's under the same standard form agreement used to contract with all other proposed class members. (*See* Livaudais Dep. at 41:4-43:2, Mays Decl. at Ex. 3.) Furthermore, like all other installers, Lowe's misclassified Plaintiff as an independent contractor. Therefore, the same conduct affected Plaintiff and all other class members in the same manner. As a result, Plaintiff's and all installers' damages arise out of the

---

[9] As the *D'Italia* court noted with regard to Legacy Installers "the record contains no contract, handbook, or other materials pertaining to Legacy contracts. Although I assume the contracts, at least, were prepared on a standard form, I do not assume that it is the same form as is used with General Contractor installers, or that it necessarily remained the same throughout the decade or more that the Legacy program has existed." *D'Italia*, Civ. No. 11-4758-BLS1, slip op. at 14. As shown herein, the same standards that that the court in *D'Italia* found demonstrated a common question as to control by contract for the General Contractors are, in fact, the same standards that apply to Legacy Installers.

---

same wrongful course of conduct.  While there may be individual differences between Plaintiff and other proposed class members, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F. 2d at 508.  Plaintiff's claims are therefore typical of those of the proposed class.

### 4. Plaintiff Will Fairly And Adequately Represent The Interests Of the Class

To satisfy Rule 23(a)(4), the class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel."  *Lopez*, 2010 U.S. Dist. LEXIS 95636, at * 20.

The first prong is easily satisfied in this case.  Here, Plaintiff has been injured by the same course of conduct that injured the other members of the Class and he seeks the same form of redress.  Moreover, Plaintiff has no interests antagonistic to those of the Class.  To the contrary, he seeks the same relief as all others members of the class – namely, to recover unpaid benefits and tax payments owed to him by Lowe's.  (*See* Am. Compl. at 10-14.)

The second prong of this inquiry is also easily satisfied.  Plaintiff's chosen counsel is experienced and qualified in class action litigation.  In fact, Block & Leviton was certified to represent the general contractor class in Massachusetts and the firm's attorneys collectively have more than 50 years of class action experience, recovering more than $1 billion on behalf of various classes over the years.  (*See* Mays Decl. at Ex. 19.)  CPM has a national reputation for excellence and success in class action litigation.  CPM has more than forty-five years of litigation and trial experience, and is widely recognized as one of the top trial firms in the United States.  CPM and its members have long practiced in this District and have been selected lead or co-lead counsel in many class action cases. The firm is acknowledged by its peers for handling cases efficiently, effectively, and swiftly.  (*See* Mays Decl. at Ex. 20.)

///

### B.      The Requirements Of Fed. R. Civ. P. 23(b)(3) Are Satisfied

Certification is appropriate under Rule 23(b)(3) as Shephard shows: (1) that common questions predominate over individual questions; and (2) class resolution is the superior form of adjudication.  Fed. R. Civ. P. 23(b)(3).

### 1.      Common Questions Of Law Or Fact Predominate

In a predominance inquiry, the focus is "the relationship between the common and individual issues."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998).   The predominance requirement is satisfied "'[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'"  *Hanlon*, 150 F.3d at 1019 (citation omitted).  "The mere presence of potential individual issues does not defeat the predominance of common questions."  *McFarland v. Memorex*, 96 F.R.D. 357, 363-364 (N.D. Cal. 1982).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  One virtue of class certification, where it is appropriate, is that it serves judicial economy, and "the notion that the adjudication of common issues will help achieve judicial economy is an integral part of the predominance test."  *In re Wells Fargo Home Mortg*., 571 F.3d 953, 958 (9th Cir. 2009) (internal quotations and citations omitted).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

Any potentially individualized calculations go to damages and "[i]n this circuit [] damages calculations alone cannot defeat certification."  *Leyva v. Medline Industries, Inc.*, No. 11-56849, slip op. at 7 (9th Cir., May 28, 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).

District Courts in this Circuit have repeatedly held that whether putative class members are employees or independent contractors under the *Borello* factors is susceptible to common

proof.  *See Norris-Wilson*, 270 F.R.D. at 607-608 (Because the degree of [the defendant's] control over the workers is susceptible to common proof, and because the same can be said of a good number of the secondary factors that define an employment relationship, the Court finds that common issues predominate over individual ones with respect to the threshold question whether putative class members are employee of DTG or independent contractors); *Sibert v. TV Magic, Inc.*, No. 12-cv-03404-DDP, 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. Aug. 21, 2102); *accord Dalton v. Lee Publ'ns*, 270 F.R.D. 555, (S.D. Cal. 2010); *Phelps v. 3PD, Inc.*, 261 F.R.D. 548 (D. Or. 2009); *Chun-Hoon v. McKee Foods Corp.*, No. C-05-620, 2006 U.S. Dist. LEXIS 82029 (N.D. Cal. Oct. 31, 2006).

In *Norris-Wilson*, the plaintiff class was a group of healthcare professionals (e.g. psychiatrists, psychologists, nurses, counselors, child and family therapists, and special educators) that brought a lawsuit against the Delta-T Group ("DTG") challenging their classification as independent contractors.  270 F.R.D. at 600.  The healthcare professionals sought certification of their class to pursue six claims, five arising under the California Labor Code and one, for unfair competition, arising under the California Business and Professions Code.  *Id.*  After applying all of the factors outlined in *Borello & Sons* to determine the employer-employee relationship, which are the exact factors at issue here, the District Court found that common issues predominated and certified the class.  *Norris-Wilson*, 270 F.R.D. at 607-08, 612.

Similarly, in *Sibert v. TV Magic, Inc.*, a putative class of cable, monitoring and broadcast equipment installers brought suit challenging their classification as independent contractors.  2012 U.S. Dist. LEXIS 118245, at *1-2.  The installers sought certification of their class to pursue compensation for overtime hours worked.  *Id.*  The Court applied *Borello* and held that the commonality prong was met because while "some of the secondary factual inquiries will vary by individual, the court finds that the primary factor – TV Magic's right to control the Installers – as well as most of the secondary indicia, will involve common inquiries . . . ."  2012 U.S. Dist. LEXIS 118245, at *8-10.  Applying the same analysis the Court "found that "common questions

of law and fact [] predominate[d] over individual ones with regard to the sole legal issue: the Installers' status as independent contractors or employees." *Id.* at *12-13.

An inquiry into Lowe's right to control, under the terms of the installers' contracts, is subject to common proof. Under *Borello & Sons*, the question is simply whether Lowe's has the power to control and direct "the performance of the service…under the contract…." This question is easily resolved by common proof. All of the legacy installers, like the Plaintiff, were required to sign identical Installer Contracts. (*See* Livaudais Dep. at 40:22-41:10, Mays Decl. at Ex. 3.) Indeed, Ms. Livaudais, one of the eight California Lowe's Area Installation Managers testified that the Installer Contracts were uniform for all installers. (*Id.* at 34:5-7.) A comparison of the general contractor guidelines and the Installer Contracts demonstrate that the material terms regarding the power to control and direct are the same. (*See* Mays Decl. at Ex. 7; Mays Decl. at Ex. 9.) Lowe's admits that it controls the details of the installation process. As noted in the 10-K disclosure cited above, Lowe's "project managers ensure that the details related to installing the products sold are efficiently executed." (2011 Form 10-K at 7, Mays Decl. at Ex. 21.) Lowe's own web site admits that it trains its installers – a hallmark of control. (*See* Mays Decl. at Ex. 22.) These all point to common questions concerning the power to control and direct in the performance of the services provided.

Following an installation project, Lowe's routinely performs an inspection of the work done by the installer and scores his performance, including the quality of the work performed. (*See* Livaudais Dep. at 61:14-20, 126:19-127:8, White Dep. at 35:5-9; 36:16-37:1, Mays Decl. at Exs. 3, 18.) If installers consistently have low customer survey scores, Lowe's implements a set of "Installer Corrective Action Guidelines." (*See* Mays Decl. at Ex. 14.) The Corrective Action Guidelines are a series of remedial measures that escalate from holding a meeting with the installer, to placing the installer on a "watch" period, and culminating with Lowe's exercising its power to terminate an installer's contract immediately. (*Id.*) In addition, Livaudais and White, each of whom served as Lowe's area installation managers during the relevant period, testified at their depositions that Lowe's had the power to, and in fact exercised the power, to remove certain individuals from an installer's job site based on job performance. (*See* Livaudais Dep. at

127:10-128:24, 130:1-15, White Dep. at 25:14-26:3, Mays Decl. at Exs. 3, 18.)   Of course, because each customer was required to make all payments directly to Lowe's, Lowe's also retained ultimate control through its ability to withhold payment from the installer if Lowe's was dissatisfied with the installer's work.  (*See* Livaudais Dep. at 73:2-25, 133:15-24, White Dep. at 22:6-13, 69:6-12, Mays Decl. at Exs. 3, 18.)  Additionally, Lowe's has the same policy when it comes to customers paying for installation services and the billing of customers; put simply, installers are not involved in the process whatsoever.  Lowe's customers pay Lowe's for their installations and, in turn, Lowe's pays the installer once the installer's work is complete.  (*Id.*) Lowe's sets the pricing for installations and handles all billing of customers.  (Livaudais Dep. at 94:4-95:25, Mays Decl. at Ex. 3.)  Again, this is also subject to common proof because Lowe's policy when it comes to installer pricing and payment by customers is uniform.

Whether Lowe's had the ability to control its installers either through its Installer Contracts or the Lowe's Standards are common questions that predominate over any individual issues.  If the trier of fact in this case finds that Lowe's has the power to control and direct pursuant to the contracts, liability in favor of the class will be established.

### 2.       A Class Action Is The Superior Method To Adjudicating This Action

The Court must also assess Rule 23(b)(3)'s second requirement that a "class action is a superior method for fairly and efficiently adjudicating the action."  Fed. R. Civ. P. 23(b)(3).  This inquiry tests whether "the objectives of the particular class action procedure will be achieved in the particular case.  This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023 (internal citation omitted).  A court considers the following factors in the superiority inquiry: (1) prospective class members' interest in individually litigating their claims; (2) the nature and effect of existing litigation; (3) the desirability of litigating the claims in the particular forum; and (4) difficulties in managing the class action. Fed R. Civ. P. 23(b)(3).

Here, members of the proposed class do not have an interest in individually controlling the prosecution of separate actions as the cost of maintaining a separate action would far outweigh the damages an individual installer might obtain. *See Leyva*, No. 11-56849 at 10.  All

installers are making the same claim – i.e. that Lowe's misclassified them as independent contractors – and no other proposed class member has begun litigation regarding the claims arising under the Act. Furthermore, the forum is appropriate because all proposed class members work or worked for Lowe's in California. Finally, maintenance of individual actions would pose more difficulty than maintenance of a class action because the proposed class members' claims are subject to common proof and adjudicating the matter as a class action instead of hundreds of individual actions lessons the burden to this Court's docket. *Id.* at 10-12; *Norris-Wilson*, 270 F.R.D. 612 (fourth factor in the "predominance analysis can almost double as the superiority analysis"); *Sibert*, 2012 U.S. Dist. LEXIS 118245, at *13; *Meyer, et al. v. U.S. Tennis Ass'n*, No. 11 Civ. 6268, 2013 U.S. Dist. LEXIS 60091, at *36-37 (S.D.N.Y. Apr. 25, 2013) (finding a class action to be the superior method for adjudication of plaintiffs' claims of misclassification and noting "[t]he alleged misclassification here applies to an entire class of [plaintiffs], rather than an individual, case-by-case determination.").

## V.     CONCLUSION

For the reasons discussed above, the proposed Class should be certified, Plaintiff Ronald Shephard should be appointed Class Representative, and Block & Leviton LLP and Cotchett, Pitre & McCarthy, LLP should be appointed as Co-Lead Counsel.

Dated: June 3, 2013                    **COTCHETT, PITRE & MCCARTHY, LLP**

                                        */s/ Matthew K. Edling*
                                        MATTHEW K. EDLING

                                        MARK C. MOLUMPHY (#168009)
                                        mmolumphy@cpmlegal.com
                                        MATTHEW K. EDLING (#250940)
                                        medling@cpmlegal.com
                                        JENNIFER R. CRUTCHFIELD (#275343)
                                        jcrutchfield@cpmlegal.com
                                        840 Malcolm Road, Suite 200
                                        Burlingame, CA 94010
                                        Telephone: (650) 697-6000
                                        Facsimile: (650) 697-0577

**BLOCK & LEVITON LLP**

Jeffrey C. Block (*pro hac vice*)
Jeff@blockesq.com
Scott A. Mays (*pro hac vice*)
scott@blockesq.com
155 Federal Street
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020

*Attorneys for Plaintiff Ronald Shephard Individually and on Behalf of All Others Similarly Situated*