MARK C. MOLUMPHY (#168009)
mmolumphy@cpmlegal.com
MATTHEW K. EDLING (#250940)
medling@cpmlegal.com
JENNIFER R. CRUTCHFIELD (#275343)
jcrutchfield@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

JEFFREY C. BLOCK (*pro hac vice*)
jeff@blockesq.com
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 1303
Boston, Massachusetts 02110
Telephone:  (617) 398-5600
Fax:  (617) 507-6020

*Attorneys for Plaintiff Ronald Shephard*
*Individually and on Behalf of All Others*
*Similarly Situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD SHEPHARD and HENRY ROMINES, on behalf of themselves and all others similarly situated;<br><br>          Plaintiffs,<br><br>     vs.<br><br>LOWE'S HIW, INC., and DOES 1 through 50.<br><br>        Defendants. | CASE NO. 12-CV-03893-JSW<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**Date:**  August 23, 2013<br>**Time:** 9:00 a.m.<br>**Courtroom:** 11 |

✆
LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;**
CASE No. 12-CV-03893-JSW

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT .......................................................................... 1

II.   ARGUMENT .................................................................................................... 2

    A.   Common Questions Are Susceptible to Common Proof and Predominate this
        Litigation........................................................................................................... 2

        1.    Arguments on the Merits Are Not Appropriate at this Stage................................. 2

        2.    The *Borello* Factors and the Test Set Out in § 2750.5 Are Susceptible to Common
              Proof and Common Questions Predominate ........................................................ 3

        3.    The *D'Italia* Opinion is Instructive..................................................................... 10

        4.    Damages are Susceptible to Measurement on a Class-Wide Basis ..................... 10

    B.   Plaintiff Does Not Assert Claims Under ERISA .............................................. 11

    C.   Shephard is a Typical and Adequate Representative......................................... 12

    D.   Class Action is the Superior Method for Litigating this Matter ....................... 15

III.  CONCLUSION.............................................................................................. 15

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;**   i
CASE NO. 12-CV-03893-JSW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. U.S.A. Cab Ltd.*
    176 Cal. App. 4th 1333 (2009) ..................................................................................... 6

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ...................................................................................... 12

*Baghdasarian v. Amazon.Com, Inc.*
    258 F.R.D. 383 (C.D. Cal. 2009) ............................................................................... 12

*Bailon v. Seok AM # 1 Corp*
    LEXIS 114744 (W.D. Wash. Dec. 9, 2009) ............................................................... 14

*Carpetland U.S.A., Inc. v. Ill. Dep't of Emp. Sec.*
    776 N.E.2d 166 (Ill. 2002) ........................................................................................... 8

*Chun-Hoon v. McKee Foods Corp.*
    LEXIS 82029 (N.D. Cal. Oct. 31, 2006) .............................................................. 2, 5, 6

*Crawford v. Honig*
    37 F.3d 485 (9th Cir. 1994) ........................................................................................ 13

*D'Italia v. Lowe's Home Centers, Inc.*
    Civ. No. 11-4758-BLS1 (Suffolk Super. Ct. Dec. 4, 2012)................................... 9, 10

*Dalton v. Lee Publ'ns*
    270 F.R.D. 555 (S.D. Cal. July 27, 2010)........................................................... passim

*Galindo v. Stoody Co.*
    793 F.2d 1502 (9th Cir. 1986) .................................................................................... 11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .................................................................................... 12

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir.  1992) ..................................................................................... 12

*Herman v. RSR Sec. Servs.*
    172 F. 3d 132 (2nd Cir. 1999)..................................................................................... 14

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000).................................................................................. 13

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

*Kingsbury v. U.S. Greenfiber*, LLC
    LEXIS 94854 (C.D. Cal. June 29, 2012) ....................................................... 15

*Leyva v. Medline Indus., Inc.*
    LEXIS 10649 (9th Cir. May 28, 2013) ......................................................... 11

*Lyle v. Food Lion, Inc.*
    954 F. 2d 984 (4th Cir, 1992) ................................................................... 14

*Martin v. Gingerbread House, Inc.*
    977 F.2d 1405 (10th Cir. Colo. 1992) ......................................................... 14

*Mattatuck Museum-Mattatuck Historical Soc'y v. Adm'r, Unemployment Comp. Act.*
    238 Conn. 273 (Conn. 1996) ..................................................................... 8

*McLandrich v. Southern Cal. Edison Co.*
    917 F. Supp. 723 (S.D. Cal. 1996) ............................................................. 13

*Mitchell v. Robert De Mario Jewelry, Inc.*
    361 U.S. 288 (1960) ............................................................................... 14

*Narayan v. EGL, Inc.*
    285 F.R.D. 473 (N.D. Cal. 2012) ............................................................. 3, 7

*Narayan v. EGL, Inc.*
    75 Cal. Comp. Cases 724 (9th Cir. 2010) .................................................... 7

*Nationwide Mut. Ins. Co. v. Darden*
    503 U.S. 319 (1992) ............................................................................... 11

*Norris-Wilson v. Delta-T Group, Inc.*
    270 F.R.D. 596 (S.D. Cal. 2010) ......................................................... passim

*Phelps v. 3PD, Inc.*
    261 F.R.D. 548 (D. Or. 2009) .................................................................... 2

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*
    48 Cal. 3d 341 (Cal. 1989) ................................................................. passim

*Sibert v. TV Magic, Inc.*
    2012 U.S. Dist. LEXIS 118245 (C.D. Cal. Aug. 21, 2012) ................................... 2

*Soto v. Commercial Recovery Sys.*
    LEXIS 140207 (N.D. Cal. Dec. 5, 2011) ..................................................... 12

*Soto v. Diakon Logisitics*
    LEXIS 89330 (S.D. Cal. Aug 30, 2010) ........................................................ 2

*Sposato v. Electronic Data Sys.*
    188 F.3d 1146 (9th Cir. 1999) ..................................................................... 11

*Van Ness Townhouses v. Mar Industries Corp.*
    862 F.2d 754 (9th Cir. 1988) ...................................................................... 15

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) .................................................................... 13

*Yokoyama v. Midland Nat'l Life Ins. Co.*
    594 F.3d 1087 (9th Cir. 2010) ................................................................... 11

**Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................................... 4

California Labor Code § 2750.5 ..................................................................... 3, 6

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................ 10

Fed. R. Civ. P. 23(a)(3) .................................................................................. 12

Fed. R. Civ. P. 23(a)(4) .................................................................................. 13

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;**   iv
CASE NO. 12-CV-03893-JSW

## I. SUMMARY OF ARGUMENT

Plaintiff Ronald Shephard submits this reply memorandum in further support of his motion for certification of a class of all installers who installed products for Defendant Lowe's HIW, Inc. ("Lowe's"). Plaintiff, and all others who install products and installation services sold by Lowe's to Lowe's customers, signed uniform contracts which govern how installers are to perform the installation services at issue. All are classified as independent contractors by Lowe's despite that Lowe's has the power to control the performance of the installation service sold by Lowe's to Lowe's customers who pay Lowe's for the installations of the product. Whether Lowe's properly classifies these installers as independent contractors can be decided by common proof making class certification appropriate.

Naturally, Lowe's opposition is devoted to arguing that there are too many individual issues to certify this action as a class action. Not so. There is no dispute that all Lowe's installers are classified as independent contractors so whether this classification is correct is a question common to all. Under California law, the key determinant of an employer/employee relationship is the right to control and the discretion over the performance of the services of the contract. In other words, does the employer, Lowe's, maintain the right to control the services bargained for under the contract. Here, since all installers sign the same uniform contract which subjects them to the same uniform rules and procedures, the answer is yes meaning that common questions predominate.

Lowe's attempts to create the argument that it does not control or direct the performance of the services by submitting affidavits from 48, out of over 860 installers, who claim they are free to perform their installations as they see fit. While it is not surprising that not every installer has the same exact experience with the more than 110 Lowe's stores located in California and hundreds of different managers, these affidavits do nothing to alter the fact that Lowe's has the power to control – even if it does not exercise it in every instance.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Whether Lowe's properly classifies its installers as independent contractors can be decided in one action as each of the elements are susceptible to common proof.

## II.     ARGUMENT

### A.   <u>Common Questions Are Susceptible to Common Proof and Predominate this Litigation</u>

Whether workers are properly classified as employees or independent contractors is a factual and legal issue that satisfies Rule 23, and courts routinely certify such classes.[1] Despite Defendant's attempt to create so-called individual issues based on individual interactions between installers and various Lowe's managers, the simple fact remains that common questions predominate and common answers will appropriately bind the proposed class.

#### 1.   Arguments on the Merits Are Not Appropriate at this Stage

As demonstrated in Plaintiff's opening brief and herein, the requirements of Rule 23 are satisfied. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Chun-Hoon*, 2006 U.S. Dist. LEXIS 82029, at *3. While Lowe's attempts to demonstrate the presence of many individualized issues, its arguments are really an attempt to prove that Lowe's installers are properly classified as independent contractors and not as employees. (*See generally* Def. Br.) This contention, however, misses the point. The question now is simply whether common proof can establish whether the installers were misclassified as independent contractors. Individual differences as to how one particular installer may have interacted with one particular manager is irrelevant to the analysis.

Furthermore, as explained in *Norris-Wilson*, Defendant's merits argument is contradictory. *Id.* at 602 ("[Defendant] argue[s] that Plaintiffs are truly independent contractors

---

[1] *E.g., Sibert v. TV Magic, Inc.*, CV-12-03494, 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. Aug. 21, 2012); *Soto v. Diakon Logisitics*, No. 08-CV-33, 2010 U.S. Dist. LEXIS 89330, *6 (S.D. Cal. Aug 30, 2010); *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 606 (S.D. Cal. 2010); *Dalton v. Lee Publ'ns*, 270 F.R.D. 555, (S.D. Cal. July 27, 2010);  *Phelps v. 3PD, Inc.*, 261 F.R.D. 548 (D. Or. 2009); *Chun-Hoon v. McKee Foods Corp.*, No. C-05-620, 2006 U.S. Dist. LEXIS 82029 (N.D. Cal. Oct. 31, 2006).

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

1    – a merits argument – and at the same time that individual issues predominate and a class-wide

2    determination of Plaintiff's proper job classification is impossible. It's hard to see how both

3    things could be true."). The same is true here. On the one hand, Lowe's paints all installers with

4    the same brush, noting that all installers agree, pursuant to the same uniform contract, that they

5    are all independent contractors. (Def. Br. at 2.) On the other hand, however, Lowe's argues that

6    notwithstanding the presence of a uniform contract and uniform classification of all installers as

7    independent contractors, there are too many individualized issues to determine the installers'

8    employment status on a class-wide basis. (*See generally* Def. Br.) As noted in *Norris-Wilson*:

9              It can't be true that Plaintiffs are categorically 'independent contractors' (the
               merits argument) *and* that it would take an individual-by-individual analysis to
10             make that determination (the class certification argument).

11   *Norris-Wilson*, 270 F.R.D. at 604. As Plaintiff shows, individual-by-individual analyses are not

12   necessary to resolve the common issue in this case: whether installers were improperly classified

13   as independent contractors.

14                    **2.  The *Borello* Factors and the Test Set Out in § 2750.5 Are Susceptible
                           to Common Proof and Common Questions Predominate**

15              Under California law, an individual performing service for an employer is presumed to be

16   the employee of such employer. *Narayan v. EGL, Inc.*, 285 F.R.D. 473, 477 (N.D. Cal. 2012)

17   (noting that, under California law, there is a rebuttable presumption of an employer/employee

18   relationship); California Labor Code § 2750.5.[2]  Pursuant to the California labor code[3] and

19

20   _____

     [2]  The test set out in California Labor Code §2750.5 sets out essentially the same test as that
21   articulated in  *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (Cal. 1989)
     ("*Borello*"); therefore, the analysis is analogous.
22   [3]  "Proof of independent contractor status includes satisfactory proof of these factors: (a) That the
     individual has the right to control and discretion as to the manner of performance of the contract
23   for services in that the result of the work and not the means by which it is accomplished is the
     primary factor bargained for; (b) That the individual is customarily engaged in an independently
24   established business; (c) That the individual's independent contractor status is bona fide and not
     a subterfuge to avoid employee status. A bona fide independent contractor status is further
25   evidenced by the presence of cumulative factors such as substantial investment other than
     personal services in the business, holding out to be in business for oneself, bargaining for a
26   contract to complete a specific project for compensation by project rather than by time, control
     over the time and place the work is performed, supplying the tools or instrumentalities used in
27   the work other than tools and instrumentalities normally and customarily  provided by
     employees, hiring employees, performing work that is not ordinarily in the course of the
28

common law,[4] the court should weigh a number of factors to determine whether an individual is an independent contractor or an employee, keeping in mind the most important indicia: whether the employer has the right to control the manner and means of accomplishing the desired result. *Borello*, 48 Cal. 3d at 350; California Labor Code § 2750.5.  While the test takes a multitude of factors into account, it is susceptible to common proof.  *See Norris-Wilson*, 270 F.R.D. at 606. Here, there can and should be no dispute that under the uniform installer contracts, Lowe's has the right to control the work that is bargained for – the installation of products and installation services sold by Lowe's to Lowe's customers.  While Lowe's makes much of the fact that it does not control the "manner and means" as to how the work is performed, control of manner and means of how the work is performed is not required under *Borello* or Cal. Labor Code § 2750.5.

Accordingly, there is "one significant issue common to the class sufficient to warrant certification...whether Defendant improperly characterized [installers] as independent contractors instead of employees."  *Dalton*, 270 F.R.D. at 559.  As in *Dalton*, where Plaintiffs assembled and delivered newspapers to the defendant's customers pursuant to substantially identical contracts, all of the claims of Plaintiff and the proposed class are predicated on the allegation that they all install products sold by Lowe's to Lowe's customers pursuant to uniform contracts providing Lowe's with the right to control the desired result.[5]  *See id.* at 561.

---

principal's work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions code, the intent by the parties that the work relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal  but gives rise to an action for breach of contract."  California Labor Code § 2750.5.

[4] The principal test as established in *Borello* is explained in detail in Plaintiff's opening brief.

[5] Here, as in *Dalton*, "All [installers'] claims are premised on the allegation that they are employees of Defendant, not independent contractors."  *See Dalton*, 270 F.R.D. at 561.  The employment status of the putative class members must be resolved in order to consider Plaintiff's claims brought under California Labor Code § 2802 and Cal. Bus. & Prof. Code § 17200.  If the putative class fails to prove that they are employees of Lowe's, these other claims will fail as well.  Furthermore, Defendant's argument that Plaintiff's expense reimbursement claim presents too many individualized issues is insufficient to defeat certification.  *See Dalton*, 270 F.R.D. at 563 (noting that expense reimbursement damages can be calculated with any reasonable basis "even if the result reached is an approximation") (internal citations and quotations omitted).

In determining whether to certify a class, the Court should examine the criteria and determine which are susceptible to common proof. *Id.* at 562 (certifying a class where some of the *Borello* factors were less susceptible to common proof); *Norris-Wilson*, 270 F.R.D. at 607 (same). Plaintiff does not dispute that individual factual variations exist. However, in this case, the most important factor, the right to control, and the majority of the additional indicia, are susceptible to common proof. Therefore, common questions predominate and the Court should certify the proposed class.

- Right to Control The Manner and Means of Accomplishing the Desired Result

Under California law, it is "the right to control and discretion as to the manner of performance of the contract for services" that determines whether the employer has the right to control and which is the most important factor in determining the employment relationship. *See Borello*, 48 Cal. 3d at 350; California Labor Code § 2750.5. Again, Lowe's unquestionably has the power to control and the discretion as to the manner of the performance under the contact for installer's service. The uniform contracts all specify the where and when installers are to install the products sold by Lowe's and the installation services sold by Lowe's. The uniform contracts dictate how the installer is to conduct himself on the job, including what to wear, and provide Lowe's the power to terminate the relationship if the performance of the service is sub-par. As courts in this jurisdiction have found, establishment of the right to control the performance of the service is amenable to class-wide proof where the employees perform services pursuant to uniform contracts. (Exhibits 5, 6 and 10 to the Declaration of Scott A. Mays ("Mays Decl.") submitted with Plaintiff's Motion for Class Certification; Declaration of Matthew K. Edling ("Edling Decl") at Ex. A.) *See Dalton*, 270 F.R.D. at 562 ("[T]he degree of Defendant's control or lack thereof [] is subject to common proof based on the uniform contracts."); *Norris-Wilson*, 270 F.R.D. at 607 ("But the parameters of the relationship…are spelled out in the same contract, and there is no apparent need to look at each putative class member to make an independent, factual finding as to whether his or her work was controlled by [defendant], and if so to what degree."); *Chun-Hoon*, 2006 U.S. Dist. LEXIS 82029, at *8-9 (denying reconsideration of a

damages class where class members signed uniform distribution agreements and defendant distributed instruction booklets).

Furthermore, all members of the Proposed Class are required to comply with the Standards of Courtesy and Professionalism (the "Standards"). The Standards are part of the contract each installer must sign. (*See* Mays Decl. at Ex. 7.) While not explicitly incorporated into the General Contractor agreement, GC installers are required to sign a copy of the Standards "as a companion to their contract" and agree to comply with the requirements set out therein. (Mays Decl. at Ex. 9, at 16-21.) The Standards clearly evince Lowe's ability to control the manner and means of accomplishing the desired result by imposing requirements regarding timing of completion of a job, installer apparel, job site conduct, etc. (Mays Decl. at Exs. 7, 9.)[6]

In its opposition, Lowe's attempts to distance itself from its own internal policies. It points to the affidavits of a number of installers which allegedly support Lowe's contention that no uniform exercise of control over installers existed.[7] (Def. Br. at 10-11.) First, Lowe's again misses the point, as under *Borello* and § 2750.5 it is not the actual exercise of control but the right to exercise control which governs. None of these affidavits dispute or counter that Lowe's possesses this right. Second, even occasional instances of noncompliance with standards or rules set out by an employer does not override the employer's purpose for distributing such standards, *i.e.* to standardize its relationship with installers. *Chun-Hoon*, 2006 U.S. Dist. LEXIS 82028, at *10-11. Third, Lowe's argument regarding the Standards is disingenuous at best. On one hand,

---

[6] Lowe's relies on *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1350 (2009) for the proposition that the contracts alone are insufficient to establish the right to control. (Def. Br. at 9.) However, in refusing to find that the trial judge abused his discretion in denying the plaintiffs' motion for class certification, the appellate court aptly noted: "[T]he court must pragmatically assess the entire action and the issues involved . . . Perhaps another trial judge considering the matter in the first instance would have allowed class treatment, but that does not merit reversal." *Ali*, 176 Cal. App 4th at 1351.

[7] The affidavits submitted by Defendant represent the experience of only a small portion of the proposed class. Therefore, they do not paint a representative picture of the class as a whole. *Chun-Hoon*, 2006 U.S. Dist. LEXIS 82029, at *13-14 ("[T]he declarations of thirty-nine distributors [] does not undercut the court's finding. . . . These numbers hold even less force considering they arise from a non-representative sampling of the entire class.").

it seeks to standardize its relationships with installers to "make certain the Installer understands Lowe's expectations," (Mays Decl. at Exs. 7, 8, 9) yet, on the other, it asserts that the Standards are not requirements. (*See* Def. Br. at 10.) Lowe's attempt at having its cake and eating it too should not be countenanced.

Because the contracts and Standards at issue in the case are substantially identical across all installers and provide a basis for finding that Lowe's has the right to control the installers, the "right to control" factor is susceptible to common proof.

- Right to Terminate At Will and Without Cause

The contracts for services provide that Lowe's and the installer are able to terminate the contract at will and without cause, with notice in writing of 30 or 60 days. (Mays Decl. at Ex. 5, Section 15; Mays Decl. at Ex. 6, Section 15; Mays Decl. at Ex. 10, Section 8.2; Edling Decl. at Ex. A, Section 8.2.) Such contractual provisions are indicative of an employer-employee relationship. *Narayan v. EGL, Inc.*, 75 Cal. Comp. Cases 724, 732 (9th Cir. 2010) (finding that contracts that contained automatic renewal clauses and could be terminated by either party upon thirty-days notice or upon breach of the agreement indicated an at-will employment relationship) (citations omitted). Because the contracts for services are substantially identical, this inquiry is susceptible to common proof.

- Whether Installers Operate Separate Businesses and Hold Themselves Out As Being In Business for Themselves

Lowe's admits that it only contracts with installers who operate separate businesses. (Def. Br. at 2, 4.) Furthermore, when performing installations for Lowe's customers, installers do not hold themselves out as being in business for themselves. As Lowe's itself reminds its installers, "Remember that to Lowe's customers, you are the face of Lowe's." (Mays Decl. at Exs. 7, 9.) Thus, this prong will present common issues. Whether the separate businesses are corporations, partnerships or sole proprietorships is irrelevant as all installers undoubtedly have separate businesses.[8]

---

[8] Defendant cites *Narayan v. EGL, Inc.*, 285 F.R.D. 473 (N.D. Cal. 2012) throughout its brief. (*See generally* Def. Br.) In *Narayan*, the Court focused on the individual inquiries necessitated by the "distinct occupation or business" factor. *See id*. at 478-480. In this case, it is undisputed

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**;     7
CASE NO. 12-CV-03893-JSW

- <u>Whether Installations Are Part of the Regular Business of Lowe's</u>

Lowe's disingenuously argues that installations are not part of its regular business, because it erroneously asserts that it merely refers its customers to installers for installation of the products the customers purchased at Lowe's and all Lowe's stores are different.  (Def. Br. at 13-14.)  Lowe's, however, sells installation services *directly* to its customers – it is not a referral business.[9]  (White Dep. at 24:9-25:7, Edling Decl. at Ex. B.)  Customers pay Lowe's and Lowe's pays the installers.   The customers are customers of Lowe's and not of the installers.   (*Id.*)  Lowe's, not the installers, warranties the installation work to the customer.  Furthermore, Lowe's profits on the sale of installations at least in part because it marks up the labor.  (*See* Livaudais Dep. at 141:6-11, Edling Decl. at Ex. C.)

This prong unquestionably will be resolved by evaluating *only* the business of Lowe's.[10] Therefore, any evidence presented as to this prong is common to all members of the proposed class and will resolve the issue as to all installers.[11]   Lowe's cannot sell installation services

---

that Lowe's contracted only with individuals engaged in a distinct occupation or business, thereby making this factor susceptible to class-wide proof.

[9] Unlike *Carpetland*, Lowe's does not limit its business to the retail sale of products.  *See Carpetland U.S.A., Inc. v. Ill. Dep't of Emp. Sec.*, 776 N.E.2d 166, 187 (Ill. 2002).  Installations are not negotiated separately and Lowe's exercises greater control over installers by, *inter alia*, refusing to allow installers to make changes to the scope of the work without Lowe's approval.

[10] *See Norris-Wilson*, 270 F.R.D. at 607 (noting that individual factual variations did not touch on whether the plaintiffs performed work in the usual course of the defendant's business); *Dalton*, 270 F.R.D. at 562 (same).

[11] Lowe's asserts that "whether a particular type of installation performed by a contractor is within Lowe's regular business will depend on the installation."  (Def. Br. at 14.)  This is incorrect.  The Installers rendered services to Lowe's "regularly and as an integrated part of [Lowe's] business."  *Borello*, 48 Cal. 3d at 355.  Furthermore, as explained in *Carpetland*, "one [can] easily imagine a service provided in the usual course of business that is not the "sole" or even the major business of the alleged employer."  *Carpetland*, 776 N.E.2d at 186.  Recent decisions in other jurisdictions agree. *E.g., Mattatuck Museum-Mattatuck Historical Soc'y v. Adm'r, Unemployment Comp. Act.*, 238 Conn. 273, 280-281 (Conn. 1996) (interpreting "usual course of business" to mean that "an activity is performed by the enterprise on a regular or continuous basis").  Where the employer's business is selling products and installations of those products, installers are necessary to and perform installations in the ordinary or regular course of the employer's business.

without having the installers to install the products.  As the Massachusetts Superior Court noted, "the brand of any retail chain is built on a dependable consistency from one store to the next. Lowe's either is in the businesses of kitchen and bath remodeling, or it isn't."  *D'Italia v. Lowe's Home Centers, Inc.*, Civ. No. 11-4758-BLS1, slip op. at 13 (Suffolk Super. Ct. Dec. 4, 2012), Mays Decl. at Ex. 1.  Because proof of this focuses squarely on Lowe's, it is susceptible to common proof.

- Method of Payment

    The method of payment for all installers is uniform, and is therefore susceptible to common proof.  Lowe's determines the pricing structure that is appended to each installer's contract and pays all installers by the job.[12]  (Mays Decl. at Ex. 5, Section 7; Mays Decl. at Ex. 6, Section 7; Mays Decl. at Ex. 10, Section 7.4; Edling Decl. at Ex. A, Section 7.4.)  Customers only make payments to Lowe's and, per the contracts for service, Lowe's pays the installer once the installation is complete.  (White Dep. at 24:17-25:7, 73:10-20; Livaudais Dep. at 140:24-141:5, Edling Decl. at Exs. B, C.)

- Whether the Parties Believe They Are Creating an Employer-Employee Relationship

    Here, as Defendant notes, the contracts pursuant to which installers performed services for Lowe's provide that installers are independent contractors.  (*See* Def. Br. at 4; Mays Decl. at Exs. 5, 6, 10).  This factor is therefore common to the class.[13]

- Whether Lowe's Supplies the Instrumentalities, Tools and Place of Work

    Whether Lowe's supplies the instrumentalities, tools and place of work is also susceptible to common proof.  Lowe's supplies the products to be installed and supplies the place of work, *i.e.* the location the customer has designated for the install. (White Dep. at 24:9-24, Edling Decl.

---

[12] Lowe's argument that this factor is not susceptible to common proof due to the fact that some installers are paid in milestones is specious.  (*See* Def. Br. at 13.)  The contracts provide that installers are paid when the job is complete.  The statements of only two installers should not overwhelm the fact that this factor is susceptible to common proof.

[13] "The label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced."  *Borello*, 48 Cal. 3d at 349 (citations omitted).  Furthermore, this factor is subjective and has low probative value, and a mistaken belief about the nature of the relationship does not defeat a finding of an employer-employee relationship. *Dalton*, 260 F.R.D. at 562.

at Ex. B.)  All installers provide their own tools.  (Def. Br. at 2.)  Lowe's does not dispute that this factor is susceptible to common proof.

Because at least 7 factors of the *Borello* and § 2750.5 tests, as well as at least three of the five extra-jurisdictional factors approved by *Borello*[14], can be resolved with common proof, common questions predominate this litigation and the Court should certify the class.

### 3.   The *D'Italia* Opinion is Instructive

Defendant makes much of the fact that the Massachusetts Superior Court "provisionally certified" a class of installers in *D'Italia* and asserts that the Federal Rules do not allow for "provisional certification".   (Def. Br. at 14.)    However, Lowe's fixation on the term "provisionally certified" does not carry any weight because, under the Federal Rules, any certified class can be altered or amended before final judgment.  Fed. R. Civ. P. 23(c)(1)(C).

In certifying a class of GC installers and their W-2 employees, the Massachusetts Superior Court found that "it seems highly likely that the contract documents are common, or substantially so, to General Contractor installers across the board ... there is therefore at least this common issue among General Contractor installers."   *D'Italia*, slip op. at 13.   Defendant emphasizes the fact that Legacy installers were excluded from the class certified in *D'Italia*. (Def. Br. at 14.)  However, the court noted that it could not include Legacy installers in the class because no Legacy installer contracts were included in the record.  *D'Italia*, slip op. at 13-14. Here, both General Contractor and Legacy installer contracts are included in the record and the contracts are materially identical "across the board."  The *D'Italia* decision is persuasive.

### 4.   Damages are Susceptible to Measurement on a Class-Wide Basis

As the Ninth Circuit recently noted, "[i]n this circuit [] damage calculations alone cannot defeat certification."  *Leyva v. Medline Indus., Inc.*, No. 11-56849, 2013 U.S. App. LEXIS

---

[14] *See Borello*, 48 Cal. 3d 341, 354-355 (noting five factors besides the right to control the work that can be considered in determining an individual's employment status).  All installers have the opportunity for profit or loss as they all operate independent businesses.  Furthermore, all installers invest in and provide the equipment and tools required to perform installations.  Lastly, whether installations are an integral part of Lowe's business focuses squarely on Lowe's.  These factors are therefore susceptible to common proof.

10649, at *8 (9th Cir. May 28, 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).  The Ninth Circuit in *Levya* looked to the defendant's removal notice for a method to calculate damages in the case.  *Leyva*, 2013 U.S. App. LEXIS 10649, at *10.  In this case, damages are easily susceptible to class-wide measurement.  Similar to the defendant in *Leyva*, Lowe's itself outlined a method to ascertain class-wide damages while asserting diversity jurisdiction under CAFA in almost identical cases in the Northern District of Illinois and in the District of Massachusetts.  (Edling Decl. at Exs. D, E.)  Lowe's Notices of Removal in those matters demonstrates that damages can be measured across the class by applying a consistent formula to each class member.  (*Id.*)

Defendant contends that the putative class members will be limited to recovering the out-of-pocket damages he suffered.  (*See* Def. Br. at 18, (citing *Galindo v. Stoody Co.*, 793 F.2d 1502, 1517 (9th Cir. 1986).)  However, as the Ninth Circuit has noted, plaintiffs can recover the face value of employer-provided insurance.  *See Sposato v. Electronic Data Sys.*, 188 F.3d 1146, 1148 (9th Cir. 1999) (concluding that the proper measure of damages was the face value of the employer-provided insurance that would have been in effect but for the action of the defendant).  As there is a demonstrated method of calculating the value of lost benefits, damages are susceptible to measurement on a class-wide basis.

### B.  Plaintiff Does Not Assert Claims Under ERISA

Lowe's mistakenly argues against certification asserting that Plaintiff's claims are pre-empted by the Employee Retirement Income Security Act of 1974 ("ERISA").  Shephard does not seek to certify an ERISA class because the potential class has not been deemed employees, a prerequisite of the application of ERISA.  Lowe's argument is incongruous: on the one hand its entire argument is that all of its installers were properly classified as independent contractors, Yet, on the other hand, it argues that those installers should have been classified as employees, and those employees' claims for benefits are preempted by ERISA, a statute that only applies to employees.  *See Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 319, 321 (1992) ("[Plaintiff's] ERISA claim can succeed only if he was [defendant's] 'employee'.").  In any event, even if this Court were to find that Plaintiff's "retirement" claims were preempted by ERISA at summary

judgment or trial, it would present a common issue that predominates over any individual issues for class certification purposes: that is, are Plaintiff's "retirement" claims in fact preempted by ERISA, and if so, are Plaintiff and the class members entitled to benefits thereunder.

### C.  Shephard is a Typical and Adequate Representative

Shephard meets the guidelines for fair and adequate representation under Fed. R. Civ. P. Rule 23(a)(3), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Typicality is met when "members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Soto v. Commercial Recovery Sys.*, No. C 09-2842, 2011 U.S. Dist. LEXIS 140207, *13-14 (N.D. Cal. Dec. 5, 2011); *quoting Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *citing Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001) (typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability).   Under this rule's "permissive standards," claims are typical if they are "reasonably co-extensive with those of absent class members; *they need not be substantially identical*." *Baghdasarian v. Amazon.Com, Inc*., 258 F.R.D. 383 (C.D. Cal. 2009) *quoting Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998) (emphasis added).

All putative class members were required to sign form agreements that classify each installer as an "independent contractor."   As part of their agreements, Plaintiff, along with all other installers, were required to abide by the same Lowe's Standards which set out guidelines the installers were expected to follow with regard to customer service, timeliness, job site conduct, parking, and work change orders, among others. *Id*.  Whether Lowe's had the ability to control installers under their form contracts and the Standards is a common question and the court need not make and individualized inquiries.

In an attempt to argue that individual issues predominate, Lowe's repeatedly points to the affidavits of 48 out of 865 Installers, who claim to have different day-to-day interactions with Lowe's employees.  It is not surprising that, with 110 stores and almost one thousand installers

and a myriad of managers, that each installer's interaction with each manager and each store is different.  However, these interactions have nothing to do with the primary indicator of an employer-employee relationship -- *i.e.* the right to control.  Contrary to Lowe's assertion that Shephard admits he was free from Lowe's control, as discussed throughout this memorandum, Shephard, and all other installers, were required to follow Lowe's rules and requirements and were, therefore, not free from Lowe's direction and control under their contracts. *Id.*  "The right to control, although not the only relevant element, is the most important element in determining a joint employment relationship." *McLandrich v. Southern Cal. Edison Co.*, 917 F. Supp. 723, 730 (S.D. Cal. 1996) (internal citation omitted).  Further, no matter what Lowe's presents as anecdotal evidence, the reality is that Lowe's classifies all installers the same way, makes them all sign form agreements, and holds them all to the same Standards.  The simple fact that, as described in the affidavits, certain Installers failed to abide by Lowe's requirements does not mean that Lowe's lost the ability to control its installers, but rather that Lowe's apparently chose not to exercise its power.  The controlling contract in this case is the same between all putative class members.  Because Shephard performs services pursuant to the same contract as the other putative class members, his claim is typical of the class.

Rule 23(a)(4) permits class certification when "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  Whether the class representatives satisfy the adequacy requirement depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (*quoting Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)).  Defendants raise no arguments as to the qualification of counsel.  As to the first prong, Defendant argues that Shephard cannot fairly and

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**;        13
CASE NO. 12-CV-03893-JSW

adequately represent the proposed Class because the indemnification provision contained in the GC installer agreement, creates a conflict between Plaintiff and the class. (*See* Def. Br. at 20). The indemnification provision that the Defendant seeks to enforce would essentially hold employees liable for Lowe's unlawful conduct.   As a matter of public policy, this provision is unenforceable and Defendant's argument must fail.

Courts routinely refuse to enforce indemnification agreements as void against public policy where employers attempt to require employees to indemnify employers for the employers' violation of labor laws. *See, e.g. Lyle v. Food Lion, Inc.,* 954 F. 2d 984, 987 (4th Cir, 1992) (finding that the FLSA does not allow an employer to indemnify itself for its own violations); *Herman v. RSR Sec. Servs.,* 172 F. 3d 132, 144 (2nd Cir. 1999) ("There is no right of contribution or indemnification for employers found liable under the FLSA.")

Forcing an employee to indemnify and employer in this context would "frustrate Congress' purpose in enacting the FLSA, since an employer who believed that any violation of the statute's overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute." *Bailon v. Seok AM # 1 Corp,* 2009 U.S. Dist. LEXIS 114744, * 9 (W.D. Wash. Dec. 9, 2009).   Indemnity actions against employees work against the principal of the FLSA.   "Congress sought to foster a climate in which compliance with the substantive provisions of [the FLSA] would be enhanced." *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).  "Compliance with the FLSA will not be furthered if employees must defend against indemnity actions. Such actions are not part of the comprehensive statutory scheme set forth by Congress." *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1407-1408 (10th Cir. Colo. 1992).  If Lowe's is allowed to enforce the indemnity clause in the GC agreement, it would have no incentive to abide by the California labor laws and could continue to misclassify employees as independent contractors without recourse.

Finally, whether this indemnification provision is void is a common question for all GC Installers, strongly supporting that the question can and should be resolved on a class wide basis. Based on these reasons, this court should not allow Lowe's to use an unenforceable contractual

provision as a method to defeat class certification. The Plaintiff is an adequate representative of the proposed class and will fairly and adequately represent the class members' interests.

### D.  Class Action is the Superior Method for Litigating this Matter

Defendant's argument that the arbitration clauses contained in the contractors' agreements will overwhelm the merits is also unavailing.  (*See* Def. Br. at 19).  Lowe's has waived arbitration with respect to Plaintiff and, in any event, the arbitration clause is invalid as to all class members.  The complaint in this matter was filed over one year ago, initial disclosures and much discovery have already been completed, and Lowe's has had ample opportunity to move to compel arbitration and has failed to do so. *See Kingsbury v. U.S. Greenfiber*, LLC, CV08-00151-AHM, 2012 U.S. Dist. LEXIS 94854 (C.D. Cal. June 29, 2012) (finding that Defendants waived the right to arbitrate after litigating the matter); *see also Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding that Defendants waived the right to arbitrate after litigating the matter for two years).

Defendant's argument that there would need to be "mini trials" for each class member to determine the varying experiences with Lowe's is a nullity. (*See* Def. Br. at 19).  All putative class members were required to sign form agreements that was intended to control the "independent contractors." The anecdotal evidence presented does not change the common question and the common proof that the contract classified all the installers in the same way and held them all to the Standards. The common question is whether all installers were employees of Lowe's and derided benefits as such.  Any determination as to one installer under this common question will bind all installers, making a class action superior.

### III.    CONCLUSION

For the foregoing reasons, the proposed Class should be certified, Plaintiff Ronald Shephard should be appointed Class Representative, and Block & Leviton, LLP and Cotchett, Pitre & McCarthy, LLP should be appointed as Co-Lead  and Class Counsel.

Dated: July 17, 2013                    **COTCHETT, PITRE & MCCARTHY, LLP**

                                        */s/ Matthew K. Edling*
                                        ――――――――――――――――――――
                                        MATTHEW K. EDLING

                                        MARK C. MOLUMPHY (#168009)
                                        mmolumphy@cpmlegal.com
                                        MATTHEW K. EDLING (#250940)
                                        medling@cpmlegal.com
                                        JENNIFER R. CRUTCHFIELD (#275343)
                                        jcrutchfield@cpmlegal.com
                                        840 Malcolm Road, Suite 200
                                        Burlingame, CA 94010
                                        Telephone: (650) 697-6000
                                        Facsimile: (650) 697-0577


                                        **BLOCK & LEVITON LLP**

                                        Jeffrey C. Block (*pro hac vice*)
                                        Jeff@blockesq.com
                                        155 Federal Street, Suite 1303
                                        Boston, MA 02110
                                        Telephone: (617) 398-5600
                                        Facsimile: (617) 507-6020

                                        *Attorneys for Plaintiff Ronald Shephard Individually and on
                                        Behalf of All Others Similarly Situated*